JS 44 (Rev. 06/17) GJP

18-cv-443

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
PAMELA CIBORT

**(b)** County of Residence of First Listed Plaintiff DAUPHIN
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
REGINALD ALLEN, ESQ., 7601 CRITTENDEN ST., F12, PHILADELPHIA, PA 19118, (215) 242-3875

**DEFENDANTS**
CAPITAL BLUE CROSS

18 443

County of Residence of First Listed Defendant DAUPHIN
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☒ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
ADAAA AND ADA
Brief description of cause:
DISABILITY DISCRIMINATION AND DEFAMATION

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $** 300,000.00
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*:
JUDGE ____ DOCKET NUMBER ____

DATE 02/01/2018
SIGNATURE OF ATTORNEY OF RECORD Reginald Allen 77083

FOR OFFICE USE ONLY

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

JAN 31 2018

FEB 02 2018

SJP

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.** 18 443

Address of Plaintiff: 628 High Street, Bressler, PA 17113

Address of Defendant: 2500 Elmerton Avenue, Harrisburg, PA 17177

Place of Accident, Incident or Transaction: Defendant's offices
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)) Yes☐ No☐

Does this case involve multidistrict litigation possibilities? Yes☒ No☐

*RELATED CASE, IF ANY:*
Case Number: ______ Judge ______ Date Terminated: ______

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes☐ No☒
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes☐ No☒
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court? Yes☐ No☒
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes☐ No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases*:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
(Please specify) Employment Discrimination - Disability

B. *Diversity Jurisdiction Cases*:
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) ______

## ARBITRATION CERTIFICATION

*(Check Appropriate Category)*

I, Reginald Allen, Esq., counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 2/2/18 [signature: Reginald Allen] Attorney-at-Law 77083 Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.**

DATE: 2/2/18 [signature: Reginald Allen] Attorney-at-Law 77083 Attorney I.D.#

CIV. 609 (5/2012) FEB 02 2018

FEB 2 2018



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Pamela Cibort | : | CIVIL ACTION |
| v. | : | 18 443 |
| Capital Blue Cross | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| | | |
|---|---|---|
| 2/2/2018 | Reginald Allen | Pamela Cibort |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 242-3875 | (267) 323-2037 | reginald.allen08@comcast.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

FEB 2 2018





IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAMELA CIBORT | : | CIVIL ACTION NO. |
| 628 HIGH STREET | : | |
| BRESSLER, PA 17713 | : | 18 443 |
| PLAINTIFF, | : | |
| | : | |
| V. | : | JURY TRIAL DEMANDED |
| | : | |
| CAPITAL BLUE CROSS | : | |
| 2500 ELMERTON AVENUE | : | |
| HARRISBURG, PA 17177 | : | |
| DEFENDANT. | : | |

COMPLAINT IN CIVIL ACTION

JURISDICTION

1. This action is brought pursuant to 42 U.S.C S 2000 (e) et. al. and the Americans with Disabilities Act as Amended (ADAA), the Age Discrimination in Employment Act (ADEA) and the Pennsylvania Human Relations Act (PHRA). Jurisdiction is based on 28 U.S.C. S 1331 and 1343 (1) (2) (3) (4) and the aforementioned statutory provisions. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and adjudicate state law claims.

## PARTIES

2. Plaintiff Pamela Cibort is an adult citizen of the Commonwealth of Pennsylvania, who has an address as indicated above in the caption.

3. Defendant Capital Blue Cross (from hereinafter, "Capital Blue Cross" or "defendant") is a corporation and/or other business entity, incorporated in the Commonwealth of Pennsylvania and/or doing business in the Commonwealth of Pennsylvania, and it does substantial business in Philadelphia, PA.

## ADMINISTRATIVE AGENCY REQUIREMENTS

4. Plaintiff filed a timely charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC) on August 22, 2017, at charge number 530-2017-03694, which was cross-filed with the Pennsylvania Human Relations Commission (PHRC); plaintiff received a Right to Sue Letter from the EEOC several days, after its date of November 9, 2017. (See Exhibit A).

## FACTS

5. Plaintiff was born on April 6, 1968, and she is currently 49 years old.

6. Plaintiff began working for defendant on November 11, 2013 as an

"Accounts Payable Clerk II."

7. Plaintiff is disabled as a result of and by way of chronic depression, panic attacks (disorder) and anxiety (disorder); these impairments substantially affected plaintiff's ability to tolerate stress, and substantially affected plaintiff's' ability to work as evidenced by the fact that she had to go out from work on leave under the Family Medical Leave Act (FMLA) and defendant's short term disability program in November 2016.

8. Plaintiff was qualified for her position at all times relevant to this complaint, and she performed her duties in no less than at a satisfactory level, actually performing excellently, including developing and spearheading projects for defendant, which increased its business good will and reputation within its community and surrounding communities.

9. One of the projects that plaintiff was involved with was entitled "Heartwalk 2016", a charitable event which raised approximately $100,000.00 (one hundred thousand dollars); plaintiff was a team captain for the project where she developed and spearheaded the successful idea "Helicopter Golf Ball Drop" which defendant used to help raise substantial monies for the Heartwalk 2016.

10. Despite the fact that the "Helicopter Golf Ball Drop" was plaintiff's idea, her co-worker, Ms. DelGrande "hijacked" the idea, falsely claiming it as her own, which was falsely endorsed by plaintiff's upper management, including Vice President (VP) Cynde Peterson-Dutch, and plaintiff's supervisor, Mr. Hamill.

11. Kathy DelGrande falsely spread the rumor that plaintiff had "screwed up" the helicopter arrangements, which then allowed DelGrande to obtain managerial authorization to take over the project in its final stages (after plaintiff had done most of the essential work), and take undeserved credit for the overall success of the project.

12. Ms. Peterson-Dutch and Mr. Hamill knew that it was false that DelGrande had done the substantial work on the project, however they endorsed that falsity and gave plaintiff little credit for her intellectual property and hard work.

13. More specifically, Ms. Peterson-Dutch and other high level management personnel endorsed the false information that DelGrande and Julie Fake were responsible for the "Helicopter Golf Ball Drop" used for the Heartwalk program as a means to devalue plaintiff and harass her.

14. In/around late 2016 and thereafter, Mr. Hamill began spreading and allowing his subordinates to spread false accusations that plaintiff had made serious errors with her work; these actions were taken for the purpose of destroying plaintiff's professional reputation, and to lay a false foundation to end plaintiff's employment.

15. Mr. Hamill intentionally refused to give plaintiff a six month performance review in accordance with defendant's performance review format and procedures.

16. If Mr. Hamill had done the 6 month performance review as required, he would have documented plaintiff's excellent performance and strengths, including any subjective areas he might have for improvement; however, rather than doing the required performance review, Hamill gave plaintiff a "SPA" day for a job well done.

17. Soon thereafter his actions described in paragraph 16 above, Hamill fabricated a negative "Final Written Warning" of plaintiff's work performance, falsely documenting that she had violated defendant's "Code of Conduct".

18. Hamill's false performance review referred to above led to a mandatory

freeze on plaintiff's ability to seek and transfer to other available positions within the company, as well as prevented her from receiving the yearly AIP bonus.

19. Hamill's negative and false "Final Written Warning" was done in the context where one of his subordinates, Carmella Walker (with Hamill's knowledge and tacit endorsement) was allowed to repeatedly harass plaintiff.

20. Plaintiff reported Walker's harassment to Hamill, but he refused to take any corrective action.

21. Hamill also condoned and endorsed Kathy Delgrande's defamatory statements and harassment of plaintiff.

22. As a result of defendant's actions described above, including a false "Final Written Warning", freezing job opportunities and prohibiting a bonus, and defamatory and harassing conduct, plaintiff started exhibiting symptoms of severe depression, anxiety, and panic, which affected her ability to work at that time.

23. Plaintiff utilized her rights under the FMLA and defendant's offered short

term disability program to go out on leave in November 2016 – defendant understood that plaintiff desired to retain her employment and would come back to work as soon as medically advised.

24. Defendant knew that plaintiff's need to take FMLA and leave, was due to "stress" related illness.

25. While plaintiff was on short term disability status, she kept in contact with defendant's Human Resources Office – Keri Wright, whom plaintiff told that she desired to return to work, however she preferred to be transferred away from what she deemed to be a hostile work environment, which plaintiff perceived was based on the perception that she was psychologically disabled, and also based on her age.

26. Plaintiff observed that defendant showed a pattern and practice of appearing to favor her younger peers and promote their advancement, while conversely, appearing to be appreciably less supportive of older employees and not promoting their upward advancement.

27. Plaintiff's request to Ms. Wright to transfer was made in the form of a disability accommodation, indicating that it was for the purpose of keeping plaintiff's stress levels to a minimum; plaintiff also requested to work from

home if possible.

28. Ms. Wright told plaintiff that there were no work from home positions available to plaintiff, but that she could return to her position working under Mr. Hamill's supervision, as long as he did not fill her position, and as long as plaintiff provided medical certification from her physician that she was able to return to work.

29. A few days after the conversation referred to in paragraph 28 above, Ms. Wright called plaintiff and told her that due to the false "Final Written Warning" that Mr. Hamill had placed plaintiff on, which caused plaintiffs "performance freeze", she was not eligible for any transfer for a year; previously, Ms. Morrissey (the Head Nurse for defendant), told plaintiff that defendant would find her another position in another department as this is what defendant was required to do, and that such transfers had been made in the past, as a normal defendant procedure in situations like plaintiffs (where she required a reasonable accommodation for her disability).

30. Defendant refused in any way to reasonably accommodate plaintiff and refused in any way to engage in an interactive process to determine

whether it could reasonably accommodate plaintiff.

31. While plaintiff was still working, Mr. Hamill inquired of plaintiff's co-worker's whether they had observed any indication that plaintiff was mentally unstable – evidencing that defendant perceived that plaintiff was psychologically disabled – such inquiry also harmed plaintiff by making her co-workers have to query whether she was fit for her duties, as Hamill suggested; Plaintiff has multiple verified witnesses ranging from her department, her peers in other departments, and upper management from defendant's workplace that will truthfully vouch for her character, demeanor and work ethics while working for defendant.

32. While plaintiff was still on approved short term disability status in accordance with defendant's policy and procedures, defendant's Human Resources Office –Keri Wright called plaintiff on March 29th 2017 and terminated her employment.

33. From around March 2016 until she was fired, plaintiff was subjected to ongoing subtle and non-subtle harassment by her co-workers and management, the former or which was endorsed by defendant's management, including discussing defendant's perception that plaintiff

was becoming mentally unstable, intentionally falsely appraising her performance to stifle her upward mobility in the company, defaming her performance for the purpose of destroying her professional reputation, refusing to even discuss a reasonable accommodation for her disability, and firing her in contravention to defendant's own procedures and policy.

34. Defendant knew that plaintiff was not deserving of being written up for allegedly violating the code of conduct, however it has used the knowingly false write up and false performance review as justification to fire plaintiff under an alleged companywide downsize.

35. It was possible for defendant to reasonably accommodate plaintiff, by either/all, allowing her to work from home for a period of time (as upon information and belief allowed other of its employees to do); honor its own short term disability policy and procedures, and allow plaintiff more time to receive medical certification to return to work; agree to transfer plaintiff as a reasonable accommodation for her disability, and which was possible and feasible; investigate its own actions against plaintiff by Mr. Hamill, and take corrective action, by expunging his false performance review and his falsely based discipline.

36. Defendant's conduct described above, caused and/or exacerbated plaintiff's depression, anxiety and panic, over a period of time from around March 2016 until it terminated her employment.

37. Defendant's termination of plaintiff's employment exacerbated her impairments identified above, and has caused her to essentially experience a psychological break, which has severely impeded her ability to attempt to find new work, resulting in extreme economic loss and hardship.

38. Upon information and belief, plaintiff was replaced by an employee under the age of forty or significantly younger than she, who is not disabled and is not perceived to be disabled.

39. As a result of defendant's actions, plaintiff experienced and continues to experience severe extreme emotional distress.

40. As a result of defendant's actions, plaintiff has suffered and continues to suffer extreme economic harm.

41. Defendant's termination of plaintiff at least allegedly in part based on a "Final Written Warning" and an accusation that she violated defendant's Code of Conduct, is knowingly false, and defendant published such false


termination throughout its company, to plaintiff's peers, co-worker's and management personnel, who had no reason to be informed of the false statements.

42. Defendant's falsely based termination of plaintiff, harmed her professional and personal reputations, and caused her severe emotional distress and economic harm.

43. Defendant was not privileged to falsely publish that plaintiff was fired at least in part for misconduct, which it knew was false.

COUNT ONE – VIOLATION OF THE ADAAA (ADA)

44. Plaintiff incorporates paragraphs 1-43 above as though fully set forth herein.

45. Plaintiff is disabled within the meaning of the ADAA by as a result of her severe depression, anxiety (disorder) and panic (disorder) – defendant was aware of plaintiff's disabilities at all times relevant to this complaint and perceived her to be and regarded her as disabled.

46. Despite her disabilities, plaintiff was able to and did perform the essential functions of her job, with or without reasonable accommodation, which

c. Reasonable Attorney's Fees and Costs;

d. Any Other Relief the Court deems appropriate;

e. A jury trial.

COUNT THREE – VIOLATION OF THE PHRA

54. Plaintiff incorporates paragraphs 1-53 above as though fully set forth herein.

55. Defendant's conduct described above violates the PHRA based on disability discrimination and age discrimination.

WHEREFORE, plaintiff request judgment in her favor against defendant, and she requests the following relief:

a. Compensatory damages;

b. Back pay;

c. Front pay;

d. Any Other Relief the Court deems appropriate.

COUNT FOUR – DEFAMATION PURSUANT TO 42 PA C.S. S 8343, ET. SEQ.

56. Plaintiff incorporates paragraphs 1-55 above as though fully set forth herein.

57. Defendant intentionally defamed plaintiff as described above by publishing throughout the company, that she was fired at least in part based on a disciplinary basis, which it knew was false; and also falsely published upon information and belief, that plaintiff was totally unable to work anymore. (when defendant knew that plaintiff could have worked with a reasonable accommodation (s).

WHEREFORE, plaintiff requests judgment in her favor and against defendant, and she requests the following relief:

a. Compensatory damages;
b. Punitive damages;
c. Retraction and Expungement of the False Discipline;
d. Any Other Relief the Court Deems Appropriate.

Respectfully submitted,

Reginald Allen, Esquire